UNITED STATES of America, Appellee,

v.

PRIORITY PRODUCTS, INC., and Walter L. and Rosalie E. Huss, Appellants.

Appeal No. 86–735.

United States Court of Appeals, Federal Circuit.

Decided June 16, 1986.

See also, C.I.T., 615 F.Supp. 591, 593.

Stephen Delgiudice, Washington, D.C., for appellants. Michael R. Totaro and Maureen J. Shanahan, Totaro and Shanahan, Beverly Hills, Cal., were on brief for appellants.

Platte B. Moring, III, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee. With him on brief were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director. Patricia Olson,

Dist. Counsel, U.S. Customs Service, Seattle, Wash., of counsel.

Before MARKEY, Chief Judge, NEWMAN, Circuit Judge, and SWYGERT, Senior Circuit Judge.*

SWYGERT, Senior Circuit Judge.

The issue presented in this case is whether the United States Customs Service's failure to name corporate officers in their individual capacities in written administrative pre-penalty and penalty notices issued pursuant to 19 U.S.C. § 1592(b) (1982) precludes suit against them in the Court of International Trade to recover a penalty originally assessed only against the corporation. The trial judge held that it did not, and we affirm.

## OPINION

### I

On October 1, 1982, pursuant to section 1592(b), the Portland, Oregon District Director of the United States Customs Service ("Customs Service") issued a pre-penalty notice regarding the allegedly fraudulent importation of bark tea from Brazil in September 1982. The notice was addressed and mailed to Priority Products, Inc. ("Priority"). On October 6, 1982 the Food and Drug Administration issued a notice of detention of the bark tea and hearing relating to the same transaction. At that time, Walter L. Huss and Jack Meligan each owned fifty percent of the shares of Priority. Walter Huss was chairman of the Board of Directors, Meligan was president, and Rosalie E. Huss (Walter's wife) acted as secretary. Priority had no other directors, officers, or employees.

On October 28, 1982 Walter and Rosalie Huss attended a meeting with the District Director of the Customs Service regarding the pre-penalty notice. By then Meligan had severed his relationship with Priority. Walter Huss became president, and the Husses were the sole shareholders of the

corporation. After the October 28 meeting Walter Huss mailed a letter, which he signed as president of Priority, to the District Director acknowledging and summarizing the meeting and presenting his position.

On April 19, 1983 a summons to appear and produce records was issued addressed to "Mr. Walter Huss, Priority Products Corp." In response to the summons, on May 4, 1983, Walter Huss appeared at the offices of the Customs Service and submitted a written statement signed by "Walter Huss" to the special agent in charge of the investigation. In that statement, Huss wrote that he had hired an attorney as the special agent had advised, that the agent should contact Huss' attorney, and that Huss was aware that the agent had made a charge of "fraud" against him. He also stated that "my property" had been improperly seized and detained by the Customs Service. On May 17, 1983 the Customs Service issued a penalty notice to Priority, with a cover letter addressed to "Walter L. Huss, President," imposing a penalty of $61,301.

Mr. Huss' attorney filed a petition for relief on August 9, 1983 on behalf of Priority. In that petition Huss' attorney wrote that Huss had been informed by the United States Attorney that the Customs Service was recommending that Mr. and Mrs. Huss be prosecuted criminally for fraud in connection with the importation. Huss' attorney addressed the minimal role the Husses had played in Priority's operations prior to November 1, 1982, and the exculpatory nature of the Husses' involvement in the importation. On that same day Huss also submitted a petition for relief to the United States Attorney in Portland, Oregon; it is unclear in what capacity he signed that petition. In it he wrote first that the District Director of Customs has alleged that the "Defendant, Walter Huss," is guilty of fraud and second that the "administrative

* Honorable Luther Merritt Swygert, U.S. Senior Circuit Judge for the Seventh Circuit, sitting by designation.

criminal charges of fraud ... brought by the Government ... are first against Walter Huss and only secondly ... against Priority Products."

The Customs Service responded by letter dated January 30, 1984 to "Priority Products, Inc., attention Mr. Walter Huss," stating that it was referring the matter to Customs Service's headquarters for review and determination. On April 10, 1984 the Customs Service sent another letter to "Priority Products Corporation" indicating that the assessed penalty had been mitigated to $16,260 and that Priority had sixty days within which to pay the penalty. Within that sixty-day period Huss filed a "criminal complaint" and affidavit of information on behalf of himself against, *inter alia*, agents of the United States Customs Service. It is unclear whether Priority or the Husses refused to pay the penalty. But because the penalty remained unpaid by the end of the sixty-day period, on September 21, 1984, the United States ("the Government") brought suit against Priority, and against Mr. and Mrs. Huss, individually, in the Court of International Trade pursuant to 28 U.S.C. § 1582. At the time of the filing of the complaint, Priority was in involuntary dissolution. The Husses were each served with a copy of the complaint. Shortly thereafter, each of them signed their answer to the complaint "for Priority Products and themselves" in which they challenged the subject matter jurisdiction of the court.

The Husses subsequently filed a motion for summary judgment on the grounds, *inter alia*, that the court lacked subject matter jurisdiction over that part of the complaint against them because they had not been named in their individual capacities in the written pre-penalty and penalty notices. They also claimed that this failure violated their right to due process under the fifth amendment.

The Government responded, disputing these claims. However, it requested that, in the event the court found the Husses' arguments to be meritorious, the trial be delayed to permit the Customs Service to complete the administrative process with respect to the Husses.

The court denied the Husses' motion, holding that nothing in the statute, 28 U.S.C. § 1582 (1982), compelled compliance with the written notice procedures in 19 U.S.C. § 1592 as to every party that might ultimately be called upon to pay the penalty assessed against the corporation and that, in any event, the evidence demonstrated that the Husses had sufficient information from which a reasonable person would conclude that the Customs Service intended to pursue them in their personal capacities. The court further held that there had been no due process violation because the Husses had actual notice that they might be sued in their personal capacity and because they had taken advantage of every administrative remedy in their personal capacities that was available to them under section 1592 of Title 19.

The case proceeded to a trial before a jury, the first jury trial ever held in the Court of International Trade. In that case, the Government presented evidence that Rosalie Huss, with the consent of her husband but without Meligan's knowledge, attempted to import the bark tea into the United States. The Husses presented evidence that they were not personally responsible for the attempted importation. At the end of the presentation of all the evidence, the jury was instructed on the circumstances under which corporate officers such as the Husses could be held personally liable for actions taken in the name of a corporation. The jury found all three defendants, the Husses and Priority, jointly and severally liable for a penalty of $30,000.

## II

On appeal the Husses do not complain about any errors in the conduct of the trial itself. They claim only that the judgment as to them must be reversed because the failure to name them individually in the written pre-penalty and penalty notices deprived the Court of International Trade of subject matter jurisdiction under 28 U.S.C.

§ 1582 and violated their right to due process.

## A

■ The Husses' first argument is that the Court of International Trade lacked subject matter jurisdiction over the claim against them because the Customs Service failed to serve them individually with a written pre-penalty or penalty notice pursuant to 19 U.S.C. § 1592. In essence their argument is as follows. Section 1582 of Title 28 provides that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—(1) to recover a civil penalty under [19 U.S.C. § 1592]...." No "civil penalty" exists under 19 U.S.C. § 1592 against a particular defendant unless the Custom Service has complied with all of the procedures of section 1592(b), including written pre-penalty and penalty notices with respect to that particular defendant. Because the Husses were never served at the administrative level with written notice of their potential individual liability for the penalty, no civil penalty exists as to them over which the Court of International Trade can exercise jurisdiction. Because compliance with the procedures of section 1592(b) is a prerequisite to the exercise of subject matter jurisdiction under 28 U.S.C. § 1582, the fact that they may have had actual notice of their potential personal liability for the penalty is simply irrelevant.

We find this line of argument unpersuasive. The instant action falls within the literal terms of 28 U.S.C. § 1582. It is one that "arises out of an import transaction" and that was commenced by the United States to recover "a civil penalty" imposed under section 19 U.S.C. § 1592, albeit a penalty originally assessed against Priority and not against the Husses personally. In addition, nothing in the statute or its legislative history demonstrate that Congress intended to narrowly circumscribe the subject matter jurisdiction of the Court of International Trade to encompass only those suits brought by the Government against parties expressly named in the administrative proceedings. In fact, the language of the statute appear to suggest otherwise. Section 1592(e)(1) provides that "in any proceeding ... commenced for the recovery of any monetary penalty claimed under this section—(1) *all issues*, including the amount of the penalty, shall be tried *de novo*" (emphasis added). Thus it appears that so long as some "civil penalty exists" the Court of International Trade can assume jurisdiction over any complaint to recover that penalty, and the issue of who is ultimately responsible for payment of the penalty is subject to *de novo* consideration.

Other considerations also compel us to conclude that Congress did not intend that formal compliance with each procedure set forth in 19 U.S.C. § 1592 as to every party that might be called upon to pay the penalty be a jurisdictional prerequisite to suit under section 1582. First, the rule proposed by the defendants would place an unduly heavy administrative burden on the Customs Service. To preserve its right to sue all possible parties, the Customs Service would have to delve into the records of each corporation subject to possible penalty to uncover the names of all corporate directors, officers, and shareholders, serve them with notice and grant them an opportunity to contest their personal liability. All directors, officers, and shareholders would have to be served because it is unlikely that the Customs Service would have the time, legal expertise, or even necessary information to determine whether, in a particular case, a particular shareholder, officer, or director might be accountable for the liabilities of the corporation. The Custom Service' regulations implicitly recognize this limitation by providing that notice is to be mailed to a party who the *facts-of-record* indicate has an interest in the property. *See* 19 C.F.R. § 162.31(a) (1985) (emphasis added).

Second, this rule would also permit those directly responsible for a violation of the customs laws to avoid liability, or, at the very least, to unduly delay enforcement of

those laws. Owners and officers might choose to alter the nature of the corporation by dissolving the corporation or selling the assets or shares of the corporation after the United States has commenced suit, thereby precluding the Government from recovering the penalty or forcing it to return to the beginning of the administrative process.

Third, failure to provide adequate notice or opportunity to participate at the administrative level is generally not perceived as a jurisdictional prerequisite to an enforcement action brought by the agency. *See, e.g., Small Refiner Lead Phase-down Task Force v. EPA,* 705 F.2d 506, 549 (D.C.Cir. 1983). Rather, these are perceived as mere procedural irregularities which are subject to harmless error analysis and which, unlike subject matter jurisdiction, are waivable.

Fourth, the defendants' claim here is in essence a claim that the agency has failed to exhaust administrative remedies. There is no doubt that the doctrine of exhaustion of administrative remedies applies to an agency seeking enforcement of administrative action prior to the completion of the administrative process. *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 767–68, 67 S.Ct. 1493, 1500–01, 91 L.Ed. 1796 (1947). Exhaustion of administrative remedies is not strictly speaking a jurisdictional requirement and hence the court may waive that requirement and reach the merits of the complaint. *See generally* 4 K. Davis *Administrative Law* § 26.8 (1983) and cases cited therein. *But see Sims v. Schweiker,* 547 F.Supp. 752, 755 (N.D.Ill. 1982). In fact, Congress appears to have recognized this in cases such as the one at bar by granting the Court of International Trade some discretion to excuse the failure to exhaust administrative remedies. *See* 28 U.S.C. § 2637(d) ("In any civil action not specified in this action, the Court of International Trade shall, *where appropriate,* require the exhaustion of administrative remedies.") (emphasis added). *See also United States v. Bavarian Motors, Inc.,* 4 C.I.T. 83, 86 (1982). In the case at bar, the trial court would have been amply justified

in excusing the Government's failure to exhaust administrative procedures, if indeed its failure to individually notify the Husses in writing did constitute a failure to exhaust administrative procedures. *Cf. id.,* 4 C.I.T. at 86.

Finally, in our view, the defendants mistakenly characterize their lack of jurisdictional contention as one involving subject matter jurisdiction over the Government's claim in the Court of International Trade. Rather, their contention is more properly characterized as one involving personal jurisdiction. Even if such personal jurisdiction were a prerequisite at the pre-penalty notice stage, constructive notice would suffice or could be waived. Both of these elements were present here.

We therefore hold that the failure to serve corporate officers/directors/shareholders with written notice of their potential personal liability does not deprive the Court of International Trade of subject matter jurisdiction over a complaint against those persons to recover a civil penalty originally assessed against the corporation.

### B

We also find no merit to the Husses' contention that they were deprived of due process by the Government's failure to serve them with written notice of their potential personal liability at the pre-penalty and penalty stages. We make this finding without deciding whether the opportunity for a trial *de novo* afforded the Husses with all the process to which they were entitled. *See Nickey v. Mississippi,* 292 U.S. 393, 54 S.Ct. 743, 78 L.Ed. 1323 (1934). Rather, we hold that Mr. and Mrs. Huss did receive due process at the administrative level.

■ As the trial court found, the record evidence demonstrates that Mr. Huss clearly had actual notice and understood that the Customs Service might sue him in his personal capacity to recover the penalty, and that he did present arguments to the District Director of Customs regarding his lack of personal culpability. He had also

hired an attorney whom he apparently consulted regarding his personal participation in the attempted importation. As a result, his protestation on appeal that he has been prejudiced because he was unable to make an informed judgment regarding whether or not to pay the mitigated penalty is unavailing.

The record is less clear that Mrs. Huss had actual notice of her potential personal liability or that she had an opportunity to participate, as an individual, in the administrative proceedings. To be sure, the record shows that she did attend the first pre-penalty hearing with the Director and that Mr. Huss' attorney in his petition on behalf of the corporation did state that Mrs. Huss had been informed that she might be criminally prosecuted. This modicum of evidence, however, does not establish either actual notice or participation in any administrative proceedings in her personal capacity. In addition, the Government has suggested no reason why Mr. Huss' knowledge or activities on behalf of himself should be imputed to his wife. Thus we cannot agree with the trial judge that Mrs. Huss' due process objection can be dismissed because of her actual notice and personal participation at the administrative level.

Nonetheless on the narrow facts of this case, we uphold the trial judge's dismissal of Mrs. Huss' due process claim. At the time of the attempted importation, Mrs. Huss was one of only three officers of Priority and she concedes that she made the important decisions regarding the attempted importation. At this time Priority was a close corporation, with her husband being a fifty percent shareholder. Shortly thereafter, when the administrative proceedings were just under way, the Husses became the sole shareholders, employees, and officers of Priority. Although we recognize that the average person is not necessarily schooled in the legal intricacies of personal liability of officers and shareholders for a corporation's liabilities, we are of the view that as one of only two employees/officers/shareholders of a small family corporation, Mrs. Huss was or should have been aware that under certain circumstances she could be held accountable for Priority's liabilities.

It is also significant that she had access to the corporation's attorney whom she could have consulted, and perhaps did consult, regarding the probability of whether she might be called upon to pay some or all of the mitigated penalty. Under these limited facts, and in view of her admission that she was largely responsible for attempting to import the bark tea, we believe that Mrs. Huss, at the very least, had constructive notice of her potential personal liability such that she should have consulted with Priority's lawyer about whether to pay the mitigated penalty or risk the imposition of a greater penalty at the trial court level. She was therefore accorded all of the process to which she was due.

The judgment of the trial court is affirmed.

AFFIRMED.