**UNITED STATES of America, Plaintiff,**

v.

**DANTZLER LUMBER & EXPORT COMPANY, a Florida corporation (a/k/a Dantzler Lumber & Export Company, Inc., a/k/a Dantzler Lumber and Export Company, a/k/a Dantzler Lumber & Export Co., a/k/a Dantzler Lumber & Export Inc., a/k/a Dantzler Building Specialties, Inc., a/k/a Dantzler Building Specialties Div., Inc.), and Antonio D. Godinez, Defendants.**

**Court No. 90–11–00600.**

United States Court of International Trade.

Dec. 15, 1992.

Stuart M. Gerson, Asst. Atty. Gen.,
David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Civ.
Div., Jeanne Davidson and Lloyd M. Green;
Richard S. Friedland, Asst. Regional Counsel, U.S. Customs Service, of counsel,
Washington, DC, for plaintiff.

Fotopulos, Spridgeon & Perez, P.A.,
Thomas E. Fotopulos, Tampa, FL, for defendants.

## OPINION AND ORDER

AQUILINO, Judge:

This action is the aftermath of defendants' trial by jury of a criminal indictment, which led to entry of judgments of conviction against them on 24 of 34 counts in the U.S. District Court for the Southern District of Florida, 89–107–CR–JWK, *aff'd sub nom. United States v. Godinez*, 922 F.2d 752, *reh'g and reh'g en banc denied* (11th Cir.1991.)

Under 19 U.S.C. § 1592 and 28 U.S.C. § 1582, the plaintiff has served and filed an amended complaint in this Court of International Trade, alleging causes of action based on fraud, gross negligence and negligence within the meaning of section 1592 and praying for imposition of penalties thereunder amounting to $1,521,701.00, $325,854.92 and $162,927.46, respectively. The defendants have interposed an answer, demanding another jury trial and asserting affirmative defenses that (a) this action is time-barred to the extent it is based upon entries of merchandise more than five years prior to its commencement, (b) recovery of penalties on entries already the subject of the criminal punishment would violate the double jeopardy clause of the Fifth Amendment to the Constitution, (c) all of the entries herein have been finally and conclusively liquidated, (d) the pre-penalty and penalty notices issued by the U.S. Customs Service were unlawful and (e) the Service has already mitigated the penalties prayed for.

The plaintiff has responded with a motion to strike these defenses and for judgment on the pleadings as to twelve consumption entries, upon which the defendants were convicted of violating 18 U.S.C. §§ 1001 and 1002.[1] They in turn move for judgment on the pleadings, dismissing this action in its entirety, which has precipitated another motion by the plaintiff, this one for summary judgment on all 36 entries at issue herein, including 13 of the 17 enumerated in the criminal indictment.

### I

Among other things, the amended complaint alleges the following:

6. From on or about January 18, 1984 through October 17, 1986, defendants ... entered or introduced, or caused to be entered or introduced, or aided and abetted the entry or introduction of ... "virola/ceiba"—faced plywood from Brazil into the United States....

7. At all material times, the importation of plywood faced with softwood from South America to the United States was free of duty, while plywood faced with hardwood was subject to a customs duty in the amount of eight (8) percent *ad valorem*, pursuant to item no. 240.-2360 of the Tariff Schedules of the United States....

8. In the computation of duty, woods were at all pertinent times defined consistently with the following botanical classification: "hardwood" species are trees with broad leaves (deciduous trees); and, "softwood" species come from trees with needles (conifers).

9. Woods of the "virola" type are a "hardwood"....

10. ... [D]efendants imported plywood faced with hardwood identified as "virola" into the United States ... on approximately 36 occasions. On all such entries, the duty due was falsely declared as zero (no duty) ... and no duty was, in fact, paid by defendants upon importation of the plywood.

---

**1.** Section 1001 provides that whoever,

in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall

be fined not more than $10,000 or imprisoned not more than five years, or both[,]

while section 1002 proscribes possession of false papers to defraud the United States.

The defendants were also convicted of violating 18 U.S.C. § 541 (entry of goods falsely classified) and § 542 (entry of goods by means of false statements), based on the same twelve entries.

11. On most such occasions, the plywood was falsely declared ... [as] faced with softwood. On a few such occasions, the plywood was falsely described as "particle-board".

12. The actions referenced in paragraphs 10 and 11 of this complaint were the result of the willful and knowing actions of the defendants, who caused these materially false declarations to be made, and they fully knew that all woods marketed as "virola" were hardwoods, and that plywood faced with any of them required, under United States law, an eight (8) percent *ad valorem* customs duty.

\* \* \* \* \* \*

15. The effect of [d]efendants' actions was to evade the payment of customs duty owed, thereby allowing plywood faced with "virola" to be sold at below-market prices or at greater profit. Between January 1984 and October 1986, approximately \$81,463.73 of customs duty was illegally evaded by Dantzler.

In their motion to dismiss these claims, the defendants point first to the statutory limitation of actions such as this found in section 621 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1621, to wit:

No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered: *Provided,* That in the case of an alleged violation of section 1592 of this title arising out of gross negligence or negligence, such suit or action shall not be instituted more than five years after the date the alleged violation was committed: ...

---

2. *See* Memorandum in Support of Plaintiff's Motion for Summary Judgment, in Further Support of Plaintiff's Motion to Strike and for Judgment on the Pleadings, and in Opposition to Defendants' Motion to Strike, p. 3 n. 4.

3. Defendants' exhibit C at 1. According to that exhibit, defendants' customhouse broker had

## A

■ As quoted above, the period of time on which the government focuses is January 18, 1984 through October 17, 1986. This action was commenced on November 21, 1990, and the defendants point out that 22 of the entries at issue occurred more than five years prior to that date, namely, those listed on exhibit A to the amended complaint as (1) through (10), (17) to (20), and (29) through (36).

According to the governing statute, *supra,* the date gross negligence or negligence within the meaning of section 1592 allegedly "was committed" starts the clock running for actions based on such allegations. Those tied to the foregoing, specified entries and encompassed by plaintiff's second pleaded cause of action (gross negligence) and third cause of action (negligence) are thus time-barred, and defendants' motion for judgment as to them must be granted. Indeed, opposing counsel do not now argue otherwise.[2]

## B

■ As indicated, the defendants would extend this summary relief to the same 22 entries covered by the first pleaded cause of action for fraud. They argue in regard to those entries that the accompanying documents were clear as to the proposed classification, albeit now alleged to have been fraudulent, which Customs thus could have and should have recognized each time a shipment was admitted. And in furtherance of their proposed rule of constructive discovery, the defendants point to a letter dated July 31, 1984 to the Service in which they requested refund of duties paid on one entry "due to a clerical error".[3] Their exhibit D is a Customs "Notice of Action" on a July 23, 1984 entry for lack of a Form A among its papers. According to the defendants, in order to issue such an advisory,

---

paid the eight-percent duty on entry 305–84–257806–2 even though the subject merchandise was characterized, like the rest, as "white virola" plywood subject to liquidation as duty-free softwood, but Customs denied a refund, stating the "botanical name Virola is considered a hardwood, not a softwood as the invoice indicated."

"the Customs Service import specialist would have had to review the entry documents, which again clearly describe the imported product as 'white virola' plywood." [4] They refer to *United States v. R.I.T.A. Organics, Inc.*, 487 F.Supp. 75, 77 (N.D.Ill. 1980), to the effect that actual discovery "may not be invoked by a plaintiff who fails to exercise 'reasonable care and diligence in seeking to learn the facts which would disclose' the alleged wrong", quoting *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir.1969).

In the context of an action such as this, the court in *United States v. Brown*, 404 F.Supp. 968 (S.D.N.Y.1975), *aff'd*, 538 F.2d 315 (2d Cir.1976), referred to the ratio of import transactions (some 2,000) to the number of import specialists (approximately 80) responsible for review thereof. In contrast, the plaintiff represents herein that the Tampa, Florida office of the Service processed a minimum of 23,044 entries annually during the period in question, and, "at best", only four import specialists worked there. Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 10.

Whatever the numbers, the issue of discovery of fraud does not lend itself solely to mathematical resolution. Subjectivity also is an element. Hence, receipt of information in the regular course of business does not automatically signify knowledge of fraud on the part of the recipient.[5] Generally, only after all the facts have been developed can the moment of discovery be discerned.

To quote from *United States v. Alcatex, Inc.*, 328 F.Supp. 129, 134 (S.D.N.Y.1971), "[a]s to when the violations were discovered, or should reasonably have been discovered ..., the most that can be said for defendants' position is that there are mate-

rial issues of fact precluding summary judgment." *See also* CIT Rule 56(d); *United States v. Neman Brothers & Associates*, 15 CIT ——, 777 F.Supp. 962 (1991); *United States v. Kingshead Corp.*, 13 CIT 660, 1989 WL 90796 (1989). In sum, any dismissal of the claims in plaintiff's first pleaded cause of action on the basis of· their timing must await trial.

## II

Paragraph 20 of the amended complaint sets forth the twelve entries upon which the defendants were convicted of violating the referenced sections of Title 18, U.S.C. In their answer, the defendants admit the averment. And the plaintiff now moves for judgment on the pleadings, arguing that the "defendants are collaterally estopped from denying liability for their fraudulent violations of 19 U.S.C. § 1592 with respect to those twelve entries." [6]

### A

On the question of their timing, comparison of the list in paragraph 20 with the exhibit A attached to the amended complaint reveals five entries with dates more than five years prior to commencement of this action, from October 22, 1984 to October 10, 1985. Pending resolution at trial of the discovery issue as to them, the plaintiff is not entitled to relief, and the part of its motion for judgment on the pleadings based on those five entries must therefore be, and it hereby is, denied.

### B

■ With regard to the other seven entries, for which claims of fraud are not arguably time-barred, a similar collateral-estoppel argument by the government prevailed in *United States v. Daewoo Int'l (America) Corp.*, 12 CIT 889, 902, 696

---

4. Defendants' Memorandum in Opposition to Plaintiff's Motion to Strike and for Partial Judgment on the Pleadings, p. 19.

5. *Cf. Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1491 (D.C.Cir.1989); *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 172 (10th Cir.1974). In this action, the plaintiff contends that Customs was first alerted to the possibility of fraud by an ITACE (Interna-

tional Trade Analysis for Compliance and Enforcement) investigation in July 1986 and that the claims of fraud as to all 36 entries have therefore been pleaded in a timely manner.

6. Memorandum in Support of Plaintiff's Motion to Strike and for Partial Judgment on the Pleadings, p. 2.

F.Supp. 1534, 1545 (1988), which granted judgment on the pleadings on the ground that pleas of guilty in a prior criminal case established all of the elements of a section 1592 violation.[7]

To be sure, the fact that the convictions in that case were founded upon pleas does not enhance the position of the defendants at bar, who availed themselves of a trial by jury and then plenary review on appeal. Nonetheless, they now urge that it is necessary to compare the elements constituting fraud under Title 18 with those contemplated by section 1592 of Title 19. For the latter, they refer the court to the Customs penalty guidelines in existence in 1984–86, 19 C.F.R. Part 171, App. B(B)(3), to wit:

> *Fraud.* A violation is determined to be fraudulent if it results from an act or acts (of commission or omission) deliberately done with intent to defraud the revenue or to otherwise violate the laws of the United States, as established by clear and convincing evidence.

According to the defendants, the verdicts against them under the former title entailed acting "knowingly" and "willfully" in contrast with the "deliberately" now charged.

Be that as it may, guidelines of the kind quoted above "are intended to provide internal guidance to Customs employees, and are not a part of the Customs Service Regulations."[8] More importantly, a higher level of proof is required for criminal as opposed to civil conviction for fraud. For example, in *United States v. Loesche*, 12 CIT 599, 688 F.Supp. 649 (1988), the defendants had pled guilty to violation of 18 U.S.C. § 1001 and were then sued for civil penalties under section 1592. The court held the defendants estopped from denying liability after admission of the material facts in the criminal case; conviction for fraud under section 1001 was sufficient to support fraud under the other section:

> The material facts which were established under more stringent standards of proof applicable to the criminal proceedings and by defendants' own admissions during that proceeding are binding in this action.... The Court is satisfied that these material facts, which are not disputed by the parties, also constitute a violation of 19 U.S.C. § 1592. These facts indicate clearly that defendants made certain fraudulent statements willfully and knowingly, and therefore intentionally, and that such statements were submitted to the United States Customs Service in an attempt to enter the merchandise into the commerce of the United States.

12 CIT at 602, 688 F.Supp. at 652 (footnote omitted). *See also United States v. Thomas*, 709 F.2d 968, 972 (5th Cir.1983) (issues litigated in a criminal proceeding are well-suited to the collateral estoppel doctrine due to the higher standard of proof); *United States v. Int'l Brotherhood of Teamsters*, 725 F.Supp. 162, 167 (S.D.N.Y.1989), *aff'd,* 905 F.2d 610 (2d Cir.1990).

### C

The defendants contend that this Court of International Trade has exclusive jurisdiction over classification matters, which therefore were neither fully nor finally litigated in the district court. They refer to *Oklahoma v. Texas*, 256 U.S. 70, 85, 41 S.Ct. 420, 422, 65 L.Ed. 831 (1921), to the effect that a question of fact or law is conclusively settled only when determined by a court of competent jurisdiction:

> The general principle ... is, that a question of fact or of law distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery or defense in a suit or action between parties *sui juris*, is

---

7. Similar reasoning can be found in federal-tax-evasion cases. *E.g., Plunkett v. Commissioner of Internal Revenue,* 465 F.2d 299 (7th Cir.1972); *Moore v. United States,* 360 F.2d 353 (4th Cir. 1965), *cert. denied,* 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967); *Tomlinson v. Lefkowitz,* 334 F.2d 262 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965).

8. T.D. 89–83. Then again, Roget's International Thesaurus 425 (3d ed. 1962) offers deliberate as a synonym for willful, while Webster's Third New International Dictionary 2617 (1981) defines willful as "done deliberately: not accidental or without purpose".

conclusively settled by the final judgment or decree therein so that it cannot be further litigated in a subsequent suit between the same parties or their privies, whether the second suit be for the same or a different cause of action.

The defendants further rely on 28 U.S.C. § 1337(c): "The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of the Court of International Trade under chapter 95 of this title." But that jurisdiction is exclusive in civil actions only. Here, the district court had criminal jurisdiction and therefore necessarily and properly resolved issues before it. Stated another way, this court is not empowered to try criminal cases, and section 1337(c) does not remove criminal matters related to Customs classification from the jurisdiction of a district court.

### D

■ The defendants also take the position that this action amounts to double jeopardy in violation of the Fifth Amendment to the Constitution.

Of course, the clause they implicate protects against being put in jeopardy of life or limb twice for the same offense. In *United States v. Valley Steel Products Co.*, 14 CIT 14, 16, 729 F.Supp. 1356, 1358 (1990), the court pointed out that, "[i]n general, there is no double jeopardy in the civil enforcement of a remedial sanction." The opinion refers to the Supreme Court's examination of this principle in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), which emphasizes that civil penalties should not amount to further punishment:

> ... A penalty assessed in a civil proceeding qualifies as "punishment" when "a defendant who has already been punished in a criminal prosecution [is] subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."

14 CIT at 16, 729 F.Supp. at 1358, quoting *Halper*, 490 U.S. at 448–49, 109 S.Ct. at 449.

The defendants argue that recovery for violations of section 1592 regarding the entries at bar would be so excessive as to inflict punishment inappropriate for a civil proceeding. However, *Valley Steel* concluded that that section has remedial, not punitive, effects:

> ... Unlike the situation in *Halper*, the remedial formula authorized under 19 U.S.C. § 1592 does not fix a civil penalty; rather, it establishes the maximum penalty which is the domestic or dutiable value of the merchandise, and gives the Court discretionary authority to determine the size of such penalty. Therefore, the rule in *Halper* cannot serve as the basis for dismissing this action; the amount of civil penalty remains to be assigned by the Court consistent with its sound discretion.

14 CIT at 17, 729 F.Supp. at 1359.

The defendants attempt to rely on *United States v. Gordon*, 10 CIT 292, 634 F.Supp. 409 (1986). However, in that case the issue was whether production of documents under section 1592 would infringe the Fifth Amendment protection against self-incrimination. The court concluded that an action pursuant to this section is not quasi-criminal in nature, thereby giving a defendant the opportunity to assert that constitutional protection.[9] Moreover, the court concluded that the statute is indeed remedial in nature:

> ... Thus, ... penalties in an amount far below the maximum allowable [may be awarded], presumably based on any rational reason including the degree of damages sustained. By replacing forfeiture with varying monetary penalties, which are subject to reduction ... and which, to varying degrees, will relate to damages, Congress has made section

---

9. *But see United States v. Modes, Inc.*, 16 CIT ——, ——, 787 F.Supp. 1466, 1471–72 n. 1 (1992), attempting to distinguish this reasoning in the context of suppression of evidence alleg-

edly obtained in violation of the Fourth Amendment for an action commenced pursuant to section 1592 and prior to any criminal case.

1592 largely remedial, rather than "punitive," both in "purpose" and "effect." [10]

Understandably, the defendants still appear impressed with the penalties this action portends. However, they also appear to ignore the approach indicated in *Valley Steel*, namely, the actual amount to be paid, if any, is determined only at the end of a full and fair exposition of the transactions challenged. Thus, whatever the sum prayed for in the amended complaint, it is not conclusive in characterizing the action as punitive. Second, insofar as the defendants attempt to rely on cumulative effect of criminal fines and civil penalties to support their double-jeopardy argument, only the latter sought by the government in conjunction with the twelve entries is appropriate to consider. While that maximum, as derived from the pleadings, could be $748,702, it would be diminished if the evidence ultimately supports dismissal of entries as time-barred. As for any remainder, by way of comparison, the potential civil penalty in *Valley Steel* was 1,350 times greater than the criminal sanction. Here, the district court ordered defendant Dantzler to pay $52,000 and defendant Godinez $49,000. The greatest possible award would thus be less than eight times the total of the criminal fines. Then again, "[m]ulti-million-dollar penalty claims and settlements are not uncommon." Peterson, *Civil Customs Penalties Under Section 592 of the Tariff Act: Current Practice and the Need for Further Reform*, 18 Vanderbilt J. Transn'l Law 679, 680 & n. 2 (1985), citing cases of that type.

In sum, the defendants have failed to persuade the court that the plaintiff is not entitled to judgment on the pleadings for fraud in the seven entries of merchandise not arguably time-barred and already adversely adjudicated in the district court.

## III

As indicated above, the plaintiff follows up its motion for partial judgment on the pleadings with one for summary judgment on all 36 entries underlying this action.

The amended complaint and the subsequent statement submitted in accordance with CIT Rule 56(i), setting forth material facts as to which it is contended there is no genuine issue to be tried, each aver that Customs transmitted statutory pre-penalty and penalty notices to the defendants and that all petitions for mitigation have been decided by the Service. In their answer, and now in argumentation in opposition, the defendants take the position that the penalty notices they received were unlawful and also that Customs has already mitigated the penalties prayed for. Moreover, they contend that all of the entries herein have been finally and conclusively liquidated.

## A

■ According to the opinion of the court of appeals in *United States v. Godinez, supra*, the defendants raised the same argument renewed now, namely, that the liquidation of the merchandise duty-free as softwood is final and conclusive against the government, which did not reliquidate within the time periods set forth in 19 U.S.C. §§ 1514(a), 1520(c) and 1521. While recognizing that the longest such period (two years per section 1521) had expired well before commencement of court proceedings in 1989, the Eleventh Circuit rejected the proposal that those statutory, administrative provisions governed the criminal prosecution. *See* 922 F.2d at 755.

The same can be said of this civil prosecution. As already discussed in this opinion, five years is the period of limitation set forth in 19 U.S.C. § 1621 and governing this action, which is separate from statutory regulation of the administrative relationship between Customs and importers. Indeed, it has been held that subsection (d) of 19 U.S.C. § 1592 is an independent avenue for the restoration of lawful duties "[n]otwithstanding section 1514". *United States*

---

**10.** 10 CIT at 298, 634 F.Supp. at 415–16 (footnote omitted). Section 1592(c) provides for "maximum penalties" for fraud, gross negligence or negligence by way of the limiting phraseology "civil penalty in an amount not to exceed . . .".

*v. Blum,* 858 F.2d 1566, 1568 (Fed.Cir. 1988).

In short, defendants' affirmative defense that all entries in this action have been finally and conclusively liquidated pursuant to 19 U.S.C. § 1514(a) must be stricken.

**B**

The defendants take the position that the pre-penalty and penalty notices provided by Customs failed to comply with the governing law and thus were in violation of their rights to due process.

The statutory procedure for pre-penalty notice is contained in 19 U.S.C. § 1592(b)(1)(A), which states that such notice shall

(i) describe the merchandise;

(ii) set forth the details of the entry or introduction, the attempted entry or introduction, or the aiding or procuring of the entry or introduction;

(iii) specify all laws and regulations allegedly violated;

(iv) disclose all the material facts which establish the alleged violation;

(v) state whether the alleged violation occurred as a result of fraud, gross negligence, or negligence;

(vi) state the estimated loss of lawful duties, if any, and, taking into account all circumstances, the amount of the proposed monetary penalty; and

(vii) inform such person that he shall have a reasonable opportunity to make representations, both oral and written, as to why a claim for a monetary penalty should not be issued in the amount stated.

According to 19 C.F.R. § 162.77(b)(1) (1986), a pre-penalty notice had to meet the first six of the foregoing statutory requirements. Section 1592(b)(2) provides that, once any responses to such a notice are received by the Service, if its officer

determines that there was a violation, he shall issue a written penalty claim to such person. The written penalty claim shall specify all changes in the information provided under clauses (i) through (vi) of paragraph (1)(A). Such person

shall have a reasonable opportunity under section 1618 of this title to make representations, both oral and written, seeking remission or mitigation of the monetary penalty. At the conclusion of any proceeding under such section 1618, the appropriate customs officer shall provide to the person concerned a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based.

The court has reviewed the pre-penalty and penalty notices apparently received by the defendants (and produced now as exhibits E, F, G and H) and finds their contents substantially in compliance with the foregoing requirements. Indeed, the defendants have been essentially left to claim failure to disclose all of the material facts allegedly establishing the violations charged. Whether true or not, they who presumably know each and every fact and circumstance fail to provide the court with information to even consider grant of the kind of preclusive relief for which they now plead. On the other hand, if such a presumption were not well-taken, it still seems safe to assume that the trial in the district court adequately apprised the defendants of the scenario of this action.

**C**

■ The defendants claim that, because Customs had agreed to mitigate the penalties prior to this action, the Service is now estopped from recovering amounts in excess of those stated to be acceptable.

The record shows that, after receipt of the prepenalty notices, the importers petitioned Customs for total remission or substantial mitigation of the proposed civil penalties. *See* Defendants' Exhibits I, J, K. The petition was granted to the extent that the Service agreed to accept $514,-420.40 and $139,208 as against Dantzler Lumber & Export Company and Dantzler Building Specialties, Inc., respectively, upon condition that those amounts be paid within 14 days. Otherwise, the matter would be referred to the Department of Justice "for institution of judicial enforce-

ment action for collection of the *assessed* penalty amounts."[11] Thereafter, Customs agreed to remission of the penalties as against Antonio Godinez upon the following specified conditions:

1. The penalties assessed against Dantzler Lumber & Export Company ... and Dantzler Building Specialties ... be settled administratively; and

2. Any actual loss of duties resulting from the violations in these cases be deposited as *withheld duties.*

Defendants' Exhibit M at 1. Those conditions were to be satisfied within five days from the date of oral notification. According to that exhibit M, a Service officer attempted to contact counsel personally by telephone on September 19, 1989, but was unable to do so, whereupon the foregoing terms were transmitted electronically the same day.

By then, the duties had been paid, but the penalties Customs was willing to accept remain unpaid, and the time for satisfaction had dissipated long before commencement of this action.

A regulation governing mitigation, 19 C.F.R. § 171.32, has provided that a

> decision to mitigate a penalty or to remit a forfeiture upon condition that a stated amount is paid shall be effective for not more than 60 days from the date of notice to the petitioner of such decision, unless the decision itself prescribes a different effective period.... If payment of the stated amount is not made ... within the effective period, the full penalty or claim of forfeiture shall be deemed applicable and shall be enforced by promptly referring the matter ... to the U.S. attorney unless other action has been directed by the Commissioner of Customs.

Moreover, the *Customs Procedural Reform and Simplification Act of 1978,* Pub.L. No. 95–910, transformed the penalty for violation of section 592 of the Tariff Act of 1930

from *in rem* into *in personam* with monetary liability.[12] The purpose has been to ameliorate the harshness of forfeiture by providing for judicial determination of the amount of penalty based upon the degree of proven culpability as well as a mechanism for recovery of the monetary equivalent of forfeiture when goods have passed beyond seizure. Prior to that enactment, if a court determined that a violation of section 592 had occurred, it had no option but to enforce the penalty of forfeiture of the goods in question. This tended to cause importers to pay mitigated amounts in fear of being held liable for full value if they challenged Customs in court and lost. Ergo, the reform act sought to enhance their right to judicial review.

When, as here, that right is invoked, review is *de novo* on all issues, including the amount of any penalty. 19 U.S.C. § 1592(e)(1). *See also United States v. Priority Products, Inc.,* 9 CIT 383, 615 F.Supp. 591 (1985), *aff'd,* 793 F.2d 296 (Fed. Cir.1986) (penalty assessed after trial was nearly two times the unpaid mitigated amount); S.Rep. 778, 95 Cong., 2d Sess. 21 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2211, 2232 ("the appropriateness of the amount of the penalty is a proper subject for judicial review under new section 592(e)"). If trial determines that violation of 19 U.S.C. § 1592 has occurred, a penalty up to and including full forfeiture value can be assessed, and whatever the parties may have attempted to accept administratively does not bind the court, particularly when the importers have not actually paid anything to mitigate, which is the case at bar. An affirmative defense pleaded on such a scenario is of no moment, and it should be, and hereby is, stricken.

### IV

To summarize the foregoing discussion, the court concludes that plaintiff's motion to strike defendants' affirmative defenses

---

11. Defendants' Exhibit L (Letter from Customs Director, Regulatory Procedures and Penalties Division, to Tampa District Director, p. 5 (April 14, 1989) (emphasis in original)).

12. However, in cases in which the government has reasonable cause to believe the importer is insolvent, seizure is permissible, followed by forfeiture if monetary penalties are not actually paid.

must be granted, save the defense based on the statute of limitations. With regard to that defense, the defendants are entitled now to judgment on the pleadings, dismissing plaintiff's second and third pleaded causes of action insofar as they are based on entries enumerated on exhibit A to the amended complaint (1) through (10), (17) to (20), and (29) through (36).

Also with regard to the defense based on the statute of limitations, plaintiff's motion for judgment on the pleadings or for summary judgment on its first pleaded cause of action in regard to entries listed on exhibit A to the amended complaint as (4), (7), (20), (29) and (34) must be denied. With regard to the remaining seven entries upon which the judgments of conviction entered, namely, (11), (15), (21), (24) and (26) to (28), plaintiff's motion for judgment must be granted.

This grant of plaintiff's motion now is on the issue of liability for fraud as to those entries. The plaintiff, however, would have summary judgment as to all entries covered by this action per the following argumentation:

> ... [W]e do not claim that by reason of defendants' conviction [*sic*] alone, defendants are collaterally estopped from denying liability on the twenty-four entries in this action that were not the subject of the conviction. Rather, the Government's position is that the elements of the criminal conviction (knowledge by defendants that virola plywood is a hardwood on which 8 percent duty is owed, defendants' attempts at deliberate tariff evasion by declaring that virola plywood is a softwood on which no duty was owed) coupled with the evidence adduced here, warrant the grant of our summary judgment motion.[13]

Whatever the logic of or proof for this position, the circumstance remains that most of the entries of goods in this action were not at issue in the criminal case or the basis of defendants' convictions. As to them, the defendants have not yet had their day in court, or they were acquitted. Since this action does not amount to double jeopardy and does constitute an opportunity for the accused to be heard on the issue of appropriate penalties across the board, plaintiff's motion for summary judgment on the open entries must be, and it hereby is, denied.

The parties are to present a proposed pretrial order to the court in conformity with this opinion on or before January 15, 1993 along with any suggested questions for veniremen on *voir dire* and any requests to charge the jury selected.

Trial will be scheduled for February 1993—subject to courtroom availability in the appropriate venue.

So ordered.

---

**13.** Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment, pp. 4–5 n. 2.