UNITED STATES OF AMERICA, PLAINTIFF *v.* KAB TRADE CO., J. OUN INTERNATIONAL, INC., WASHINGTON INTERNATIONAL INSURANCE CO., AND JULIE OUN, DEFENDANTS

WASHINGTON INTERNATIONAL INSURANCE CO., CROSS-CLAIMANT *v.* KAB TRADE CO., J. OUN INTERNATIONAL, INC., AND JULIE OUN, CROSS-DEFENDANTS

Court No. 96–06–01635

(Dated March 26, 1997)

*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Andrea I. Kelly),* for plaintiff.

*Politis & Politis (John N. Politis)* for defendants and cross-defendants KAB Trade Co., J. Oun International, Inc., and Julie Oun.

*Glad & Ferguson (T. Randolph Ferguson)* for defendant and cross-complainant Washington International Insurance Co.

### MEMORANDUM OPINION

DiCARLO, *Senior Judge:* Plaintiff instituted this action for collection of duties and penalties against defendants KAB Trade Company; J. Oun International, Inc. (J.O. Int'l); Julie Oun, an officer and stockholder of both KAB Trade and J.O. Int'l; and Washington International Insurance Company. Plaintiff alleges that defendants violated 19 U.S.C. § 1592 by undervaluing merchandise in connection with 533 entries

---

[5] The Court further agrees with Mr. Gridley and Mr. Bandrowski that the Explanatory Note to THK's proposed section, HTSUS 8283, indicates that bearing housings are separate from ball bearings themselves. *See* Tr. 108, 147. The relevant Explanatory Note language states the following: "Bearing housings incorporating ball, roller or needle roller bearings remain classified in this heading; but ball, roller or needle roller bearings presented separately fall in **heading 84.82.**" Explanatory Notes, Section 84.83, subsection (B).

The Court also finds it significant that the HTSUS article description that THK suggests for LMG parts, HTSUS 8483.90.30, specifies that it encompasses "[other] parts of bearing housings and plain shaft bearings." This language supports the position that the HTSUS 8483 references to housed bearings contemplates separate items (*i.e.*, a housing and a bearing), as it specifically refers to parts of bearing *housings* and there is no other provision in HTSUS 8483 for parts of conglomerate *housed bearings*.

filed with the United States Customs Service at the port of Los Angeles between July 1, 1991 and March 31, 1993. (Compl. at 2–3.) J.O. Int'l was the importer of record for five of those entries; the remainder were attributed to KAB Trade. *Id.* Plaintiff claims that the violation was due to gross negligence, or in the alternative to negligence. *Id.* at 7–8. This court has jurisdiction under 28 U.S.C. § 1582 (1994).

Defendants J.O. Int'l and Julie Oun have moved for an order to dismiss for lack of subject matter jurisdiction, for lack of personal jurisdiction, and for failure to state a claim upon which relief can be granted. U.S. Ct. Int'l Trade R. 12(b)(1–2, 5). Defendants KAB Trade, J.O. Int'l, and Julie Oun have moved for a more definite statement of the portions of the complaint that allege gross negligence. U.S. Ct. Int'l Trade R. 12(e). Both motions are denied.

## BACKGROUND

KAB Trade is a closely-held importer and wholesaler of general merchandise with approximately four employees. Julie Oun owns the corporation, and is its secretary and sole stockholder. (Pl.'s Resp. Defs.'s Mot. Dismiss App. at 56, 59 (Dun & Bradstreet Report); Pl.'s Suppl. App. Docs. 2, 4 (certified copies of documents filed by KAB Trade with the Secretary of State for the State of California).) Ms. Oun is also the president of J.O. Int'l, which shares an address with KAB Trade. (Pl.'s Resp. App. at 62 (Dun & Bradstreet Report); Pl.'s Suppl. App. Docs. 1, 3 (certified copies of documents filed by J.O. Int'l with the Secretary of State for the State of California).) J.O. Int'l was incorporated in May 1990, KAB Trade in April 1991. (Pl.'s Suppl. App. Docs. 3–4.) The state of California filed liens for J.O. Int'l state tax debts against KAB Trade in 1992. (Pl.'s Resp. App. at 60 (Dun & Bradstreet Report).)

An audit and investigation by Customs concluded that the alleged undervaluation had deprived the United States of $47,110.70 in duties. (Compl. at 4.) Accordingly, Customs issued a pre-penalty notice and demand for payment to KAB Trade on March 4, 1994. The notice indicated that KAB Trade had thirty days to exercise its right to contest the proposed penalty. *Id.* at 1–2; *see* 19 U.S.C. § 1592(b); 19 C.F.R. § 162.78 (1993) (presentations responding to pre-penalty notice). Customs issued a penalty notice on or about March 24. (Compl. at 4.) On April 1, Ms. Oun submitted a petition for review on behalf of KAB Trade. (Pl.'s Resp. App. at 29.) Customs responded on May 25 in a letter addressed to Ms. Oun. The letter stated that on review Customs had concluded that the alleged violation had occurred due to gross negligence. *Id.* at 32.

On August 5, Customs sent a bill for a penalty of $188,442.80 and a second demand for payment of $47,110.70 in duties owed. Both were addressed to Julie Oun at KAB Trade. The bill stated that KAB Trade's right to petition at the administrative level had expired, and that the only further option available, other than payment in full, was the filing of an offer of compromise. *Id.* at 37–39. On August 30, Ms. Oun filed an offer of compromise of $11,017.20 and sent Customs a cashier's check

for that amount, while claiming that Customs had not yet responded to the April 1 petition for review. *Id.* at 40–43. Ten months later, on June 27, 1995, Customs issued a second bill for the penalty. *Id.* at 44. Customs rejected the offer of compromise on August 14, 1995. *Id.* at 45. On October 31, it issued a final demand for payment of the penalty and duties owed, also addressed to Ms. Oun at KAB Trade. *Id.* at 47. On June 28, 1996, plaintiff instituted this action for collection of the amount owed.

## DISCUSSION

In a proceeding for the recovery of a monetary penalty claimed by the United States under § 1592, "all issues, including the amount of the penalty, shall be tried de novo." 19 U.S.C. § 1592(e)(1) (1994). In the context of a motion to dismiss, the material allegations of a complaint are taken as admitted and are liberally construed in favor of the plaintiff. The court will not dismiss the action if the allegations, when assumed to be true, state a claim upon which the court may grant relief. *United States v. Jac Natori Co., Ltd.*, 17 CIT 348, 348, 821 F. Supp. 1514, 1515 (1993); *see also e.g., Jenkins v. McKeithen*, 395 U.S. 411, 421–22, *reh'g denied*, 396 U.S. 869 (1969); *Humane Soc'y of United States v. Brown*, 19 CIT 1104, 901 F. Supp. 338, 340 (1995).

## I

Defendants J.O. Int'l and Julie Oun claim that Customs did not give them adequate notice of their potential liability because it named only KAB Trade during the pre-penalty and penalty phases of its investigation. They argue that this failure to give notice was a violation of due process, and that therefore Customs has not yet exhausted its administrative remedies, forcing the court to dismiss this action for lack of personal and subject matter jurisdiction. (Defs.'s Mem. Support Mot. Dismiss at 2.) Ms. Oun also asserts that liability for customs duties is a personal debt of the importer of record and its surety company only, and that therefore she is not liable for any duties or penalties owed. *Id.* at 6.

The Court of Appeals for the Federal Circuit (CAFC) has held that a failure to name corporate officers in their individual capacities in pre-penalty and penalty notices does not preclude an enforcement action against them to recover a penalty originally assessed against the corporation. *United States v. Priority Products, Inc.*, 793 F.2d 296 (Fed. Cir. 1986); *see also United States v. Modes, Inc.*, 13 CIT 780, 723 F. Supp. 811 (1989). Defendants in *Priority Products* contended that Customs had failed to provide adequate notice of their potential liability. As characterized by the CAFC, defendants' argument was that failure to do so was a violation of due process that deprived the Court of International Trade of personal jurisdiction over any defendant not previously named at the administrative level. *Priority Products*, 793 F.2d at 300. The CAFC held that bringing an enforcement action against a party not expressly named in the administrative proceedings is not a *per se* violation of due process. *Id.* at 299–300; *Modes*, 13 CIT at 785, 723 F. Supp. at 815 (quoting *Priority Products*). It also found that even assuming that personal

jurisdiction is required at the pre-penalty phase, on the facts of the case, the defendants had received due process at the administrative level. *Priority Products*, 793 F.2d at 300–01.

Procedural due process consists of notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). A party may have either actual or constructive notice. A defendant in a customs proceeding has constructive notice if she "was or should have been aware that under certain circumstances she could be held accountable" for customs penalties owed by a corporation. *Priority Products*, 793 F.2d at 301. The court will often find constructive notice when the defendant is one of a very small number of owners, officers, or employees. *Id.*; *Modes*, 13 CIT at 785, 723 F. Supp. at 815. It may also find notice when the defendant participated in earlier proceedings, *Modes*, 13 CIT at 785, 723 F. Supp. at 815 (defendant testified in enforcement proceeding and personally notified attorney not to comply with summons from Customs), or in other circumstances where it is evident that the defendant is or should be aware of his potential liability, *United States v. Dantzler Lumber & Export Co.*, 16 CIT 1050, 1059, 810 F. Supp. 1277, 1285 (1992) (where defendants had already been convicted of fraud in a related criminal case, it was "safe to assume that the trial in the district court adequately apprised the defendants of the scenario of [the Customs] action.").

There can be no doubt that Ms. Oun had actual notice of the penalty proceeding. She is an officer and the sole owner of KAB Trade. Correspondence from Customs was addressed to her, and she alone responded on behalf of KAB Trade. (*See* Pl.'s Resp. App. (copies of correspondence between Customs and Ms. Oun).) She also had at least constructive notice of the possibility of personal liability. Contrary to Ms. Oun's assertion, neither the statute nor the regulations limit liability for customs penalties to the "importer of record." A corporate officer may be liable for false statements made by a corporation if the officer knowingly participated in the deception or failed to correct the false statements upon learning of them. *United States v. Appendagez, Inc.*, 5 CIT 74, 79–80, 560 F. Supp. 50, 54–55 (1983). At this stage of the proceedings, the court cannot hold as a matter of law that Ms. Oun is shielded from liability. Ms. Oun did not hire an attorney during the administrative proceedings, (Defs.'s Mem. Support Mot. Dismiss at 3–4), and may not have fully realized the extent of her potential personal responsibility for some of KAB Trade's liabilities. Nevertheless, an officer exercising reasonable care under the circumstances would have investigated that possibility. The court therefore concludes that Ms. Oun had constructive notice of her potential liability, and received all the process she was due. *See Priority Products*, 793 F.2d at 301 (defendant "should have been aware" of potential liability); *Modes*, 13 CIT at 785–86, 723 F. Supp. at 815.

Similar considerations lead the court to conclude that J.O. Int'l also had notice of its potential liability. There are a number of situations in which a court will hold a corporation liable for the debts of a related cor-

poration: when one is a mere instrumentality for the other, in a *de facto* merger or continuation, when there is an express or implied agreement that one will assume the other's debts, or when a change in corporate form is motivated by fraud. *See, e.g., United States v. Ataka America, Inc.*, 17 CIT 598, 600–02, 826 F. Supp. 495, 498–99 (1993). Again, the court cannot hold as a matter of law that J.O. Int'l is shielded from liability. While the exact relationship between J.O. Int'l and KAB Trade is not evident on the pleadings, the corporations were sufficiently intertwined that they should have been aware of their potential liability for one another's debts under one of the above scenarios. The two companies had the same registered agent and shared at least one officer. They also had the same address and engaged in the same import activity. (*Cf.* Pl.'s Resp. App. at 56, 59; Pl.'s Suppl. App. Docs. 2, 4, *with* Pl.'s Resp. App. at 62; Pl.'s Suppl. App. Docs. 1, 3.) Moreover, KAB Trade had already been held liable for tax liens against J.O. Int'l. (Pl.'s Resp. App. at 60 (Dun & Bradstreet Report).) At trial, J.O. Int'l may be able to establish that it is not liable for KAB Trade's debts, but the possibility of liability is substantial enough that under the circumstances J.O. Int'l can be said to have had constructive notice of it.

As all of the defendants had notice, their due process claim must rest on the question of whether they had an adequate opportunity to be heard at the administrative level. The court will dismiss an enforcement action for failure to exhaust administrative remedies if Customs does not allow adequate time for defendants to respond. *United States v. Chow*, 17 CIT 1372, 841 F. Supp. 1286 (1993). Defendants have thirty days to prepare a written and oral response to a pre-penalty notice unless the statute of limitations will run in less than one year. 19 C.F.R. § 162.78 (1993) (implementing 19 U.S.C. § 1592(b)(1)(A)(vii)). In *Chow*, Customs gave the defendant only seven days to respond even though two years and five months remained before the defendant could have raised the statute of limitations as a defense. The court dismissed the action on the grounds that the defendant had had no adequate opportunity to be heard at the administrative level, in violation of due process. *Chow*, 17 CIT at 1376, 841 F. Supp. at 1289–90; *cf. United States v. Obron Atlantic Corp.*, 18 CIT 771, 775–76, 862 F. Supp. 378, 382–83 (1994) (Customs' failure to provide a thirty-day response period was harmless error, as "[i]t is necessary * * * to assess whether [defendant] in fact received due process at the administrative level rather than enforce a rigid application of Customs' regulations.").

The defendants here had ample opportunity to participate at the administrative level. Over two years elapsed between the date of the pre-penalty notice and the beginning of this enforcement action. Customs advised KAB Trade through Ms. Oun that it had thirty days to respond to the pre-penalty notice. (Pl.'s Resp. App. at 1–2.) Ms. Oun submitted a written response. *Id.* at 29. After defendants' right to petition at the administrative level expired, Customs informed Ms. Oun that she had the option of filing an offer of compromise. *Id.* at 37–39. Ms. Oun filed an

offer that was ultimately rejected. *Id.* at 40–43, 45. Defendants clearly had time to prepare and present a response "as to why a claim for a monetary penalty should not be issued in the amount stated." 19 U.S.C. § 1592(b)(1)(A)(vii) (1994). Therefore, there was no due process violation that would divest this court of personal jurisdiction over any of the defendants.

As the court concludes that the pleadings, if proven, would establish that defendants received due process at the administrative level, it does not address the question of whether *Nickey v. Mississippi* applies to actions brought in this court under 19 U.S.C. § 1592 (1994). *Nickey v. Mississippi*, 292 U.S. 393 (1934) (opportunity for trial *de novo* affords defendants all due process to which they are entitled: no constitutional mandate that defendant have notice and opportunity to respond at administrative level if "all available defenses may be presented to a competent tribunal before exaction of the [obligation]"); *see also Priority Products*, 793 F.2d at 300; *Modes*, 13 CIT at 786 n.3, 723 F. Supp. at 816 n.3 (also declining to address *Nickey).*

## II

Defendants' claim that this Court lacks subject matter jurisdiction over any of the parties because Customs has not exhausted its administrative remedies is equally unavailing. The court in *Priority Products* noted that "nothing in [19 U.S.C. § 1592] or its legislative history demonstrate that Congress intended to narrowly circumscribe the subject matter jurisdiction of the Court of International Trade to encompass only those suits brought by the Government against parties expressly named in the administrative proceedings." *Priority Products*, 793 F.2d at 299. The fact that Customs previously named only KAB Trade therefore does not constitute a failure to exhaust all administrative remedies.

Even if Customs had not fully exhausted its administrative remedies, the court would still have authority to accept the case. Exhaustion of administrative remedies is ordinarily a prerequisite to judicial review, *United States v. Bavarian Motors, Inc.*, 4 CIT 83, 86 (1982), and administrative agencies are not immune from that requirement. *Priority Products*, 793 F.2d at 300; *Bavarian Motors, Inc.*, 4 CIT at 86. However, this court has "explicit authority to waive exhaustion of administrative remedies[.]" *Modes*, 13 CIT at 786, 723 F. Supp. at 815–16 (citing 28 U.S.C. § 2637(d) (in an enforcement action, "the Court of International Trade shall, *where appropriate*, require the exhaustion of administrative remedies.") (emphasis added)); *Priority Products*, 793 F.2d at 300. Waiver is appropriate when a procedural defect at the administrative level amounts to harmless error because the defendant has in fact had a reasonable opportunity to be heard. *United States v. Obron Atlantic Corp.*, 18 CIT 771, 774–76, 862 F. Supp. 378, 382–83 (1994); *United States v. Jac Natori Co., Ltd.*, 17 CIT 348, 349–50, 821 F. Supp. 1514, 1516 (1993). As discussed above, defendants were "afforded ample opportunity to achieve the administrative remedies available * * * under the statute

and regulations." *Modes*, 13 CIT at 786, 723 F. Supp. at 816. The court would therefore be justified in waiving exhaustion of administrative remedies, should such a waiver be necessary.

### III

In their motion for more definite statement, defendants KAB Trade, J.O. Int'l, and Julie Oun argue that since the maximum penalty for gross negligence is double that for negligence, 19 U.S.C. § 1592(c)(2–3) (1994), the court should require the government to plead its allegations of gross negligence with greater specificity than its allegations of mere negligence. (Defs.'s Mem. at 9.)

There are three degrees of culpability under § 1592: negligence, gross negligence, and fraud. A violation is negligent if the offender fails to exercise reasonable care and competence. 19 C.F.R. pt. 171 app. B(B) (1996). It is grossly negligent if the offense results from "actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute." *Id.* Plaintiff has not alleged that the defendants committed fraud.

It is true that both the maximum penalty and the government's ultimate burden of proof are higher for gross negligence than for negligence. The government must prove every element of the definition of gross negligence, while for ordinary negligence it need only show that acts or omissions constituting a violation occurred. 19 U.S.C. § 1592(e)(3–4) (1994). In the latter case, defendants then have the burden of showing that those acts or omissions did not occur as the result of negligence. *Id.* However, the pleading requirements of this court draw no distinction between the two degrees of culpability. Rule 9(b) states that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." U.S. Ct. Int'l Trade R. 9(b). Thus while fraud must be pleaded with particularity, all other states of mind may be pleaded generally, including those required for gross negligence: knowledge, indifference, and wanton disregard. Defendants are asking the court to create an additional subcategory of specificity in pleading that the plain language of Rule 9(b) neither requires nor permits. This the court is unwilling to do.

The purpose of a motion for more definite statement is to correct a pleading "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]" U.S. Ct. Int'l Trade R. 12(e). Its purpose is not to convert a pleading into an evidentiary record sufficient to support a motion for summary judgment. *United States v. Obron Atlantic Corp.*, 18 CIT 771, 777, 862 F. Supp. 378, 383 (1994); *United States v. Jac Natori Co., Ltd.*, 17 CIT 348, 350, 821 F. Supp. 1514, 1517 (1993) (Rule 9(b) does not require the pleading of detailed evidentiary matters). This court has held that a pleading describing the date, place, and content of alleged misrepresentations is sufficient to allege fraud.

*Obron*, 18 CIT at 777, 862 F. Supp. at 383; *Natori*, 17 CIT at 351, 821 F. Supp. at 1517; *United States v. F.A.G. Bearings Corp.*, 8 CIT 201, 206–07, 615 F. Supp. 562, 567 (1984). Plaintiff's complaint includes the time and place of the alleged misrepresentations: from July 1, 1991 to March 31, 1993, at the port of Los Angeles. (Compl. at 2–3.) It also identifies the statements at issue: 533 Customs entries allegedly undervaluing imported merchandise. Since the pleading is stated with particularity sufficient to support even an allegation of fraud, it is certainly not too vague or ambiguous to support a claim of gross negligence. Accordingly, the court finds that the complaint is sufficient as written.

## CONCLUSION

Defendants' motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted is denied. Defendants' motion for more definite statement is also denied.