SLIP OP. 00-29

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: JAMES L. WATSON, SENIOR JUDGE

|  |  |  |
|---|---|---|
| | X | |
| UNITED STATES, | : | |
| Plaintiff, | : | COURT NO. 98-12-03234 |
| v. | : | |
| RALPH NUSSBAUM AND DISCOUNT LOCKS, INC., | : | |
| | : | |
| Defendants. | | |
| | X | |

[Defendant Ralph Nussbaum moves for judgment on the pleadings asserting as defenses to the Government's penalties action under 19 U.S.C. § 1592 that he was denied due process by the U.S. Customs Service in its administrative proceedings, and that the action is barred by the statute of limitations. Nussbaum also moves to defer responses to the Government's pending discovery requests until thirty days following the decision on his motion. Held: Stay of the Government's currently pending discovery requests is granted. Motion for judgment on the pleadings is denied as to the due process defense, but decision of his motion is deferred as to the statute of limitations defense. As to that latter defense, the parties may request new discovery limited solely to the issues raised by the Government's claim of equitable estoppel. After completion of the new limited discovery, Nussbaum may renew his defense based on the statute of limitations.]

Dated: March 22, 2000

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director;  A. David Lafer, Senior Trial Counsel (Lucius B. Lau, Attorney), Commercial Litigation Branch, Civil Division, United States Department of Justice; Steven L. D'Alessandro, Assistant Counsel, United States Customs Service, of counsel, for plaintiff.

Singer & Singh ( Sherry L. Singer, Esq.) for defendant Ralph Nussbaum.

**WATSON, SENIOR JUDGE:**

**OPINION AND ORDER**

**I.**

**<u>INTRODUCTION</u>**

This is a civil action for penalties commenced by the Government pursuant to 19 U.S.C. § 1592, which action falls within the court's jurisdiction under 28 U.S.C. § 1582.  Currently before the court is a two-prong motion by defendant Ralph Nussbaum ("Nussbaum") which requests (1) a judgment on the pleadings under CIT Rule 12(c) for dismissal of this action as to himself personally; and (2) a stay of the Government's current discovery requests until 30 days after the date upon which the court rules upon the motion for judgment on the pleadings.

Nussbaum advances two defenses to the Government's penalties action: (1) in the administrative proceedings at the U.S. Customs Service ("Customs") against the corporate defendant Discount Locks, Inc. ("Discount Locks"), he was denied due process in his individual capacity because he was not personally named as a party in the pre-penalty and penalty notices; and (2) the action against him in his individual capacity is barred by the five-year statute of limitations pursuant to 19 U.S.C. § 1621.

The Government contends that although Nussbaum was not personally named as a party in the pre-penalty and penalty notices, he had, at the very least, constructive notice of a potential liability  in his individual capacity for penalties, and therefore, he had an opportunity to defend himself individually. The Government further posits that Nussbaum's statute of limitations defense is precluded by the

principle of equitable estoppel.

Under CIT Rule 12(c), if on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Since both parties rely on documentary exhibits outside the pleadings, Nussbaum's motion under Rule 12(c) will be treated as one for summary.

Based upon the undisputed facts on Nussbaum's motion, his due process defense is rejected, but a decision on his defense based on the statute of limitations is reserved until completion of limited discovery concerning the issues raised by equitable estoppel.  Nussbaum's motion to stay the Government's current discovery requests is granted.

## II.

## FACTUAL BACKGROUND

This case has a protracted and labyrinthine administrative background with its genesis in fifteen entries of safes at the Port of Newark, New Jersey by defendant Discount Locks during the period of July 30, 1988 through May 7, 1991. At the relevant period of time, Mr. Nussbaum was President and sole shareholder of Discount Locks. Nearly eight years ago, on September 23, 1992, Customs initiated administrative  proceedings pursuant to 19 U.S.C. § 1592(b) and issued a pre-penalty notice addressed and mailed to Discount Locks. Exhibit A of the notice alleges that Discount Locks and its principals filed false entries, in that the certificates of origin claimed the safes had originated in Swaziland when in fact the safes were manufactured in South Africa. Inexplicably, Nussbaum - - the sole principal of Discount Locks - - was never named individually in any notices issued by Customs during the

investigation or proceedings or made a party to the administrative proceedings in his individual capacity.

The notice further alleges that "the safes would have been subject to a 5.7% duty rate if entered as product of South Africa while importation of safes made in Swaiziland are designated GSP [duty-free]." Continuing, Exhibit A advises that Customs tentatively determined the level of culpability as fraud (false statements made deliberately, with an intent to defraud the revenue). The  proposed penalty was $223,812.00, and loss of revenue (duty) was in the amount of $12,757.28  Following receipt of the pre-penalty notice,  Nussbaum wrote to Customs on behalf of Discount Locks seeking numerous extensions of times in which to respond (some 14), citing difficulty in obtaining information from South Africa, which requests were granted. By May 26, 1994, Discount Locks had retained its current legal counsel, Singer & Singh, Esqs., which thereafter requested several extensions of time to respond to the pre-penalty notice, forwarded waivers of the statute of limitations and corporate resolutions Customs had requested, and otherwise represented the interests of Discount Locks before Customs. On November 4, 1994, approximately two years after the pre-penalty notice was issued, Discount Locks through its legal counsel filed its response to the notice.

On January 18, 1995, and on March 23, 1995, Customs issued penalty and amended penalty notices to Discount Locks demanding penalties in the amount of $223,812.00 and duties in the amount of $12,757.28. The penalty notices did not name Nussbaum personally, or even as the principal of Discount Locks.  After further extensions of time in which to respond to the penalty notices, on March 28, 1996 Discount Locks filed its response to the penalty notice.  At the request of Customs, legal counsel for Discount Locks  forwarded to Customs corporate resolutions and waivers of the statute of limitations. The waivers signed by Nussbaum on behalf of the corporation were dated April 15, 1993,

April 15, 1994, September 14, 1995, and December 30, 1996.  Customs never requested Nussbaum

to sign a waiver of the statute of limitations in his individual capacity.  The Government concedes that,

consequently, with respect to Nussbaum personally, the five-year statute of limitations under 19 U.S.C.

§ 1621(1) became available to Nussbaum as an affirmative defense starting on July 30, 1993 and

ending on May 7, 1996.

Following the expiration of the statute of limitations against Nussbaum individually as to all the

subject entries, on March 21, 1997 counsel for Discount Locks forwarded to Customs a letter by

Nussbaum dated March 20, 1997 which stated that "[d]ue to all the problems over the years, it was

decided to discontinue operations."  The letter went on to explain that the company had utilized all it s

funds and that the corporation was unable to meet its obligations to certain creditors, and that "[t]his

fact was a cause of extreme embarrassment to Discount Locks, Inc."  There is no indication that

Customs ever requested  a financial statement from Discount Locks during the investigation. Thereafter,

on  April 8, 1997, Customs informed Discount Locks that the agency had mitigated the penalty to

$51,029,28 for "gross negligence." Again, on August 1, 1997, counsel for Discount Locks forwarded

to Customs a July 30, 1997 letter from a certified public accountant that stated: "In 1994 it was

decided that due to the numerous problems and failures over many years, it was best to discontinue

operations."

On December 21, 1998, approximately twenty-one months after receiving notice that Discount

Locks had discontinued business in 1994, the Government commenced this action pursuant to 28

U.S.C. § 1582 against both Ralph Nussbaum and Discount Locks to recover civil penalties for

violation of 19 U.S.C. § 1592. On January 22, 1999, the Government  filed an amended complaint

seeking recovery of penalties and duties for gross negligence with respect to false statements and omissions in the entries related to country of origin. On April 7, and May 12, 1999, Nussbaum and Discount Locks filed answers, and on August 2, 1999, the Government served upon the defendants its first set of requests for admissions, interrogatories and request for production of documents. Subsequently, Nussbaum and Discount Locks filed consent motions with the court seeking additional time in which to respond to these discovery requests.  The court granted both motions.  As a result, the deadline to respond to the Government' discovery requests was December 8, 1999. However, on December 7, 1999 the current motion was filed by Nussbaum requesting a stay of the Government's discovery  for a period of 30 days from the decision of the motion for judgment on the pleadings.

### III.

### DISCUSSION

### A.

### Due process defense.

Customs did not name Nussbaum in his individual capacity as a party to the administrative proceedings in the pre-penalty and penalty notices served under 19 U.S.C. § 1592 (only the corporate defendant Discount Locks, Inc. was named). Nussbaum, therefore, argues that since he was never given notice of proceedings against him in his individual capacity (see 19 U.S.C. § 1592 (b)(1)(A)),[1] he was

---

[1] This statutory provision reads: "If the Customs Service has reasonable cause to believe that there has been a violation of subsection (a) of this section and determines that further proceedings are warranted, it shall issue to the person concerned a written notice of its intention to issue a claim for monetary penalty." (Emphasis added.) The pre-penalty notice named and was issued solely to Discount Locks. The statute further requires that the notice "inform such person that he shall have a reasonable opportunity to make representations, both oral and written, as to why a claim for a monetary penalty

denied his statutory and constitutional due process rights to notice and an opportunity to be heard with respect to his personal liability at the agency level. Moreover, argues Nussbaum, the fact that Customs repeatedly requested that he sign waivers of the statute of limitations only <u>on behalf of Discount Locks,</u> <u>and never requested a waiver of  him personally</u>, logically led him to believe that he was not involved in the penalty proceedings in his individual capacity.

Both parties direct the court's attention to <u>United States v. Priority Products, Inc.</u>, 793 F. 2d 296 (Fed. Cir. 1986) as to the jurisdictional and due process issues in this case. There, the Government sued both the corporation and its shareholders (who were husband and wife) in their individual capacities seeking to recover civil  penalties assessed under § 1592 for allegedly attempting to make fraudulent entries. Similar to the current situation, the Priority Products  shareholders had not been named or served in their individual capacities by Customs in pre-penalty and penalty notices in administrative proceedings under § 1592. The individual defendants moved for summary judgment on the grounds, <u>inter</u> <u>alia</u>, that the Court of International Trade lacked subject matter jurisdiction over the part of the complaint against them individually because they had not been named in their individual capacities in the written pre-penalty and penalty notices, and they also claimed that such failure to name them individually violated their right to due process under the Fifth Amendment. The trial court denied the shareholder's motion to dismiss on jurisdictional and due process grounds, and the case proceeded

---

should not be issued in the amount stated." <u>Id.</u> <u>See</u> <u>also</u> 19 U.S.C. § 1592 (b)(2);19 C.F.R.   § 162.78. Nussbaum insists that since he was never issued a notice in his individual capacity by Customs, he had no opportunity to be heard as to his personal liability. There is no evidence currently before the court that any issue as to Nussbaum's personal liability was ever raised by either Customs or Nussbaum.

to trial before a jury. The jury found all defendants - -  the shareholders and the corporation - - jointly and severally liable for the penalties.

On appeal, the Federal Circuit rejected the shareholders' contention that the Court of International Trade was deprived of subject matter jurisdiction over the complaint against them personally because Customs failed to serve them in their individual capacities with written notice of their potential personal liability. Then turning to the due process issue, the Federal Circuit held that there was also no merit to the shareholder's contention they were deprived of due process by Custom's failure to serve them in their individual capacities with the statutory written pre-penalty and penalty notices since each of the shareholder defendants  had either actual, or at the least constructive, notice of their potential personal liability.  In view of the conclusion reached, the appellate court declined to also decide whether an opportunity for a trial de novo afforded the shareholder defendants  with all the process to which they were entitled, citing Nickey v. Mississippi, 292 U.S. 393 (1934).

The Federal Circuit held that the husband shareholder clearly had actual notice since he understood that Customs might sue him in his personal capacity to recover the penalty, he presented arguments to Customs regarding his lack of personal culpability, and he also hired an attorney whom he apparently consulted regarding his personal participation in the attempted importation. Id. at 300. On these particular facts, Priority Products is not an analogue for a finding that Nussbaum had actual notice since there is no showing by the Government that Nussbaum actually understood he had a potential personal liability and presented arguments to Customs regarding his personal culpability. As previously noted, no issue as to individual liability was ever raised at the administrative level.

With respect to the wife, the appellate court rejected the trial court's dismissal of her due

process objection on the ground she also had <u>actual</u> notice and an opportunity to participate in the administrative proceedings as an individual. However, "<u>on the narrow facts of this case</u>" the appellate court upheld the trial court's dismissal of her due process claim on the basis that "at the very least, [the shareholder] had <u>constructive</u> notice of her potential liability. . ." Id. at 301 (emphasis added).

Specifically, constructive notice to the wife-shareholder of her potential personal liability was predicated on the following "<u>limited facts</u>": during the time of the importation she was one of only three officers of Priority and admitted she was largely responsible for making the important decisions regarding the attempted importation; Priority was a close corporation and after the administrative proceedings were just underway, the  husband and wife became the sole shareholders, employees and officers of Priority; "as one of only two employees/officers/ shareholders of a small family corporation, [the wife] was or should have been aware that <u>under certain circumstances</u> she could be held accountable for Priority's liabilities"; and it was also significant "that she had access to the corporation's attorney whom she could  have consulted, and perhaps did consult, regarding the probability of whether she might be called upon to pay some or all of the mitigated penalty." Id. at 301 (emphasis added).

Although Priority Products was expressly decided by the Federal Circuit on its "limited facts," and personal liability expressly occurs only in "certain circumstances," it would appear that being a sole officer/director/ shareholder of a small corporation represented by legal counsel and personal participation in the importations are significant concomitants of  constructive notice of a potential personal liability for penalties. Accordingly, while not dispositive in the current matter, under the undisputed facts presented on Nussbaum's motion, the Priority Products' rational is instructive.

Here, at the time of the importations and during the administrative proceedings,  Nussbaum was

President, sole director and sole shareholder - - and, therefore, sole principal - - of Discount Locks; he

actively participated in the importations; and, significantly, too, Discount Locks, through Nussbaum,

retained legal counsel in 1994, with whom he could have consulted, and perhaps did consult, concerning

his participation in the subject importations and entries. Discount Locks legal counsel even had the

benefit of the 1986 Priority Products decision.

Nussbaum distinguishes Priority Products on the basis that unlike the individual defendants in

Priority Products, supra, defendant Ralph Nussbaum neither suspected that he might be a defendant in a

law suit, nor did he make any representations to the Customs Service in his own behalf concerning his

personal culpability as the question never came up.  Nussbaum also points up that unlike Priority

Products, Customs requested and received waivers of the statute of limitations solely from Discount

Locks, from which fact  he was "led to the logical conclusion" that Customs' proceedings were not

against him individually. The court must agree that Nussbaum could justifiably assume Customs had no

intent to sue him personally.      The fact, stressed by the Government,  that the pre-penalty notice

charged the corporation and its principals with filing false entries, standing alone was plainly insufficient to

put Nussbaum on actual notice of his potential personal liability.  Nonetheless, based on the facts that

Nussbaum was president, sole director, and sole shareholder of the corporation, he participated in the

subject importations, and he had access to the corporation's legal counsel, under the rational of Priority

Products he had  constructive notice of his  potential personal liability, which satisfies his due process

rights to notice and opportunity to be heard at the administrative level.

In view of the foregoing conclusion, as in Priority Products, it is unnecessary to also decide

whether an opportunity for a trial de novo affords Nussbaum with all the process to which he is entitled,

See Nickey v. Mississippi, 292 U.S. 393 (1934).

**B.**

**Nussbaum's statute of limitations defense.**

As previously mentioned, Nussbaum contends that for all the subject entries the five-year statute of limitations under 19 U.S.C. § 1621(1)[2] became available to him as an affirmative defense starting on July 30, 1993 and ending on May 7, 1996. Hence, Nussbaum maintains that this action, commenced in 1998, is time-barred as to himself in his individual capacity as to all the subject entries. Plaintiff responds that as in the case of statutes of limitations generally, waiver and estoppel preclude raising this affirmative defense, citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 235 (1959) (respondent induced delay by petitioner in filing suit by misrepresenting to petitioner that he had seven years in which to sue when in fact he had only three years; if petitioner could prove that respondent's agents conducted themselves in such as way he was justifiably misled into good-faith belief that he could commence suit anytime within seven years after it accrued, equitable estoppel would preclude the action from being barred by the statute of limitations); and Cada v. Baxter Healthcare Corp., 920 F.2d 446. 450 (7th Cir. 1990) (equitable estoppel would preclude defendant from arguing that the action is time-barred "if the defendant takes active steps to

---

[2] This section provides: "No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered; *Provided,* That in the case of an alleged violation of section 592 of this title arising out of gross negligence or negligence, such suit or action shall not be instituted more than five years after the date the alleged violation was committed." As previously mentioned, the entries at issue were made during the period of July 30, 1988 to May 7, 1991.

prevent the plaintiff from suing in time. . .").

According to the Government, the waivers  executed solely on behalf of  Discount Locks  on April 15, 1993, April 15, 1994, September 14, 1995, and December 30, 1996, the many extensions of time to respond to the notices, and failure to disclose until 1997 that Discount Locks had discontinued its business in 1994 are factors that are relevant to whether Nussbaum's reliance upon the statute of limitations may be inequitable and precluded. In essence, the Government posits that Nussbaum may have misrepresented its stated need for the extensions of time to respond to the notices, and may have simply requested extensions to mislead and dupe Customs into delaying action against Nussbaum in his individual capacity. The Government also essentially suggests that Nussbaum had a continuing fiduciary duty to inform Customs of the financial status of the corporation when Customs requested corporate waivers and resolutions.  Therefore, the Government seeks discovery "needed to determine whether the doctrine of equitable estoppel should preclude Ralph Nussbaum from raising the statute of limitations as an affirmative defense," Pltf's Mem., at 15.

In order to give the Government a full  opportunity to rebut Nussbaum's affirmative defense of the statute of limitations under the principle of equitable estoppel, the Government shall be permitted limited new discovery into whether Nussbaum through any deceit, misrepresentations, or concealment of financial information he had a duty to submit  in connection with the extensions or waivers  justifiably lulled Customs into delaying commencement of its action against Nussbaum personally until 1998.

The Government has a heavy burden to persuade the court to find, as urged by the Government, that Nussbaum took "active steps to prevent the plaintiff from suing in time." Pltf's Mem. at 11, or  that Customs was "lulled into a false security," see  Glus at 233. Requests for extensions of time to respond

to Customs' notices to obtain information and signing waivers demanded by  Customs during the pendency of a protracted  investigation are routine practices. Moreover, for a variety of reasons, some businesses succeed while others fail, and the latter could very well occur in the course of protracted administrative proceedings running over many years, such as those that occurred in this case.[3]

Fundamentally, then, Nussbaum's compliance with Customs' demands for  waivers of the statute of limitations solely on behalf of Discount Locks, the many extensions of time to respond to the notices, and the discontinuance of  a failing business during  the course of the very protracted administrative proceedings are not per se wrongful or inequitable conduct. Accordingly, to establish any of  the foregoing factors relied on by the Government as a basis for invoking equitable estoppel,  the Government must submit evidence that Customs was justifiably mislead or duped into not taking timely legal action against Nussbaum personally by  conduct while normally routine, somehow under the circumstances of this case were "inequitable."

Significantly, too, Discount Locks was represented by legal counsel at the time of the extensions requested on May 26, 1994, June 27, 1994, July 28, 1994, August 29, 1994, September 29, 1994 and October 28, 1994, at the time the waivers of the statute of limitations were signed on September 14, 1995 and December 30, 1996, and indeed counsel forwarded to Customs the letters by Nussbaum and

---

[3] A part of the alleged plot and scheme to dupe Customs into delaying action against Nussbaum personally, the Government has represented to the court that Nussbaum not only concealed discontinuance of Discount Locks in 1994, but also concealed a surreptitious succession of Discount Lock  by DLI Safes in 1994. Pltf's Mem. at 20 However, the court agrees with Nussbaum that as evidenced by numerous documents submitted to the court in plaintiff's appendices, the existence of DLI Safes was well-known to Customs, at least as far back as 1992, long prior to the discontinuance of Discount Locks. Simply put, a surreptitious succession of  Discount Locks by DLI Safes in 1994, as claimed by the Government, is refuted by its own documentary exhibits.

his accountant on March 21, 1997 and August 1, 1997. Thus, many of the events relied on by the Government as grounds for equitable estoppel were handled by defendants' current able legal counsel. Consequently, the Government's allegations of inequitable or wrongful conduct indirectly (and perhaps unintentionally) implicate possibly serious concerns relating to defendants' legal counsel as well as Nussbaum. Counsel for defendants vigorously dispute there was anything surreptitious or nefarious concerning the extensions and waivers.

Nussbaum's Reply Br. at 6-10.

Candidly, while from a careful review of the voluminous documentary record before the court on Nussbaum's motion (i.e., plaintiff's appendices) the court seriously doubts that the Government can discover any evidentiary support for its equitable estoppel theory, the court nevertheless in the exercise of its discretion grants plaintiff the opportunity it requests to obtain discovery relevant to equitable estoppel. Given the lengthy history of the administrative proceedings and the Government's long delay in commencing this action, the court sees no prejudice to the Government if at this juncture its currently pending extensive discovery requests are stayed, and the Government presently limits its discovery to the issues arising out of the statute of limitations and equitable estoppel. Until the court rules on Nussbaum's dispositive motion that the action is time-barred as to him in his individual capacity, defendants should not be required to incur the substantial expenditures of legal fees and costs in responding to the currently pending extensive and wide-ranging discovery requests of the Government.

While it is true, as asserted by the Government, that its pending discovery is directed at both defendants, and not just Nussbaum, resolution of the statute of limitations defense of Nussbaum personally may substantially affect whether the Government wishes to continue incurring substantial costs to proceed solely against the apparently financially defunct corporate defendant. Therefore, the

interests of all parties would be best served at this juncture if discovery is limited to whether equitable estoppel is applicable in this case to the statute of limitations defense.

.                                              **IV.**

**<u>CONCLUSION</u>**

For the foregoing reasons, **IT IS HEREBY ORDERED:**

1. Nussbaum's motion for dismissal of the action on due process grounds is DENIED.

2. Decision of Nussbaum's  motion for dismissal on the ground that the action is barred by the statute of limitations shall be reserved.

3. Within thirty days of the date of this order, the parties may serve discovery requests <u>limited</u> <u>solely</u> to whether there were any misrepresentations, deceptions, unlawful concealments, or misleading conduct concerning Discount Locks' requests for extensions of time,  waivers of the statute of limitations, or the discontinuance of business in 1994, and to whether Customs was thereby justifiably misled or deceived into delaying commencement of an action against Nussbaum  personally. The foregoing discovery shall be completed by no later than ninety days from the date of this order.

4. Within thirty days after completion of the foregoing limited discovery,  Nussbaum may renew his affirmative defense based on the statute of limitations.

5. Responses by defendants to the currently pending discovery requests of the Government shall be stayed for thirty days after a decision as to whether this action is barred by the statute of limitations with respect to Nussbaum personally.

Dated: New York, New York
      March 22, 2000

                                    James L. Watson, Senior Judge

**ERRATUM**

Slip Op 00-29

**UNITED STATES v. RALPH NUSSBAUM AND DISCOUNT LOCKS, INC.**

Court No. 98-12-03234

On page 3, line 5 of the text should read: as one for summary judgment.

March 27, 2000